IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IVAN MAO-CHANG CHEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-CV-2366-CM |
| ) | |
| DILLARD'S INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| Consolidated with: ) | |
| ) | |
| IVAN M. CHEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-CV-2517-JTM |
| ) | |
| DILLARD'S, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Currently before the court is defendant's motion to compel arbitration and stay proceedings (Doc. 7), and defendant's supplemental motion to compel arbitration (Doc. 16). For the following reasons, the court grants defendant's motions, stays all proceedings, and orders the parties to proceed to arbitration.

**I.  Background**

Plaintiff began working for defendant in 1995. In 2001, defendant began implementing an arbitration program for its associates. As part of this program, defendant gave plaintiff a copy of an arbitration agreement that needed to be signed as a condition of continuing employment. Plaintiff

-1-

signed the agreement on July 12, 2001 ("2001 Agreement"). In relevant part, the 2001 Agreement is governed by the Federal Arbitration Act ("FAA") and states that:

> Any dispute concerning this Agreement – the way it was formed, its applicability, meaning, enforceability, or any claim that all or part of this Agreement is void or voidable – is subject to arbitration under this Agreement.

(Doc. 8-1 at 7, 15.)

Nearly ten years later, plaintiff executed a second arbitration agreement on July 7, 2011 ("2011 Agreement"). The 2011 Agreement is also governed by the FAA and includes a provision that is essentially identical to the provision quoted above. After executing both agreements, plaintiff continued to work for defendant until defendant terminated his employment on August 13, 2011.

On March 21, 2012, plaintiff filed a lawsuit pro se in state court alleging various claims under the Kansas Act Against Discrimination. Defendant moved to dismiss those claims. In response, plaintiff withdrew his claims and filed an amended petition alleging harassment, discrimination, and retaliation under the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. Defendant removed the lawsuit to federal court and moved to compel arbitration.

While defendant's original motion to compel arbitration was pending, plaintiff filed another lawsuit in state court alleging defamation, slander, and libel. Defendant removed that case to federal court and moved to consolidate the two cases, which the court granted. Defendant also filed a supplemental motion to compel arbitration that includes plaintiff's new state law claims.

## II. The Federal Arbitration Act

As noted above, both of the arbitration agreements are governed by the FAA. The purpose of the FAA is to place arbitration agreements on equal footing with other contracts. *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The primary substantive provision of the FAA is Section 2, which provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Sections 3 and 4 outline the procedures for implementing Section 2. Specifically, Section 3 provides a mechanism for a party to move a federal court for an order staying a lawsuit "upon any issue referable to arbitration under an agreement in writing for such arbitration." *Id.* at § 3. And Section 4 allows a party aggrieved by another party's failure to arbitrate in accordance with a written arbitration agreement to seek an order compelling arbitration in the manner provided for in the arbitration agreement. *Id.* at § 4.

The Supreme Court recently discussed the application of Section 2 in a similar case. In *Rent-A-Center*, the plaintiff and the defendant entered into an arbitration agreement as a condition of the plaintiff's continued employment. *Id.* at 2775. The arbitration agreement included within it multiple agreements to arbitrate. The agreement to arbitrate also provided for arbitration of all "past, present or future" disputes arising from the plaintiff's employment with the defendant. *Id.* at 2777. The agreement to arbitrate provided that "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.*

The defendant moved to compel arbitration, and the plaintiff opposed arbitration arguing that the entire arbitration agreement was unenforceable and unconscionable. The Supreme Court focused on the second agreement to arbitrate—which it referred to as a delegation provision—and explained that it is a separate, antecedent agreement that should be enforced "'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4." *Id.* at 2777–78. The

-3-

Supreme Court further explained that the question before it was "whether the delegation provision is valid under § 2." *Id.* at 2778.

In *Rent-A-Center*, the plaintiff only challenged the arbitration agreement as a whole.  He did not specifically challenge the enforceability or unconscionability of the delegation provision.  Therefore, the Supreme Court determined that the delegation provision was valid and covered the dispute between the parties—namely, whether the entire arbitration agreement was valid and enforceable. *Id.* at 2779–81.  Because the delegation provision was valid and covered the dispute, the Supreme Court stayed the litigation and compelled arbitration.

**III.   Analysis**

In this case, defendant moves to stay this action and compel arbitration.  Plaintiff opposes arbitration, arguing that the 2001 Agreement and 2011 Agreement as a whole are unconscionable and unenforceable and that defendant waived the right to arbitrate.

The court determines that plaintiff's unconscionablity and unenforceability challenges should be resolved by the arbitrator.  Specifically, the 2001 Agreement and the 2011 Agreement include multiple agreements to arbitrate.  One of these agreements is the delegation provision quoted above.  The delegation provision clearly and unmistakably provides the arbitrator with authority to decide whether the 2001 Agreement and 2011 Agreement are unconscionable and unenforceable. *See First Options v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.") (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).[1]

---

[1] The agreements also explain that the arbitration shall be conducted according to "the most current Employment Dispute Resolution Procedures of the American Arbitration Association." (Doc. 8-1 at 7, 19.)  The current version of these rules authorizes the arbitrator to determine his own jurisdiction.  See Rule 6, AAA Employment Arbitration Rules and Mediation Procedures (available at www.adr.org). The incorporation of these rules is additional clear and unmistakable evidence that the parties intended for the arbitrator to decide threshold issues of arbitrability. *See P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867–68 (10th Cir. 1999) (determining that a party is bound by all procedural rules of the AAA when the party incorporates the AAA rules by reference); *Nazar v. Wolpoff & Abramson, LLP*, No. 07-2025-JWL, 2007 U.S. Dist. LEXIS 11027, at *11–13 (D. Kan. Feb. 15, 2007) (determining that incorporation of procedural rules is "additional clear and unmistakable evidence" that the parties intended to delegate questions of arbitrability); *Qwest Corp. v. New Access Commc'ns LLC*, No. 03-N-1278, 2004 U.S. Dist. LEXIS 28523, at *20–33 (D. Colo. Mar. 31, 2004) (determining that the parties' agreement to arbitrate under the AAA rules is a clear and unmistakable agreement to arbitrate questions of arbitrability).

Like the Supreme Court in *Rent-A-Center*, this court must enforce this delegation provision unless plaintiff specifically challenges the validity of that provision. Plaintiff does not specifically challenge this provision. Instead, plaintiff challenges the enforceability and conscionability of the agreements as a whole. Therefore, the court determines that the delegation provision is valid and covers the disputes regarding the enforceability and conscionability of the 2001 Agreement and 2011 Agreement.

Plaintiff's final challenge is that defendant waived its right to arbitration. Specifically, plaintiff argues that defendant waived its right to arbitrate because defendant did not respond to plaintiff's request for internal review and because defendant filed a motion to dismiss and served limited discovery while the original case was in state court. The delegation provision does not clearly and unmistakably cover this dispute. So the court must resolve this issue before compelling arbitration.

Plaintiff's internal review argument ignores the plain and unambiguous language of the arbitration agreements. The agreements indicate that the internal review process is optional and that defendant may or may not respond to a request for internal review. (*See, e.g.*, Doc. 8-1 at 20 ("If you have a dispute over a Legal Claim with the Company you may, but do not have to, begin the dispute resolution process by requesting Internal Review."); *see also id.* ("If no response is received within 30 days, or if you are not satisfied with all or any part of the Internal Review, you will have the right to proceed to the next step: arbitration.").) Therefore, this argument is not persuasive.

Plaintiff's argument based on defendant's actions in state court is equally unpersuasive. The Tenth Circuit has outlined factors for courts to consider when evaluating whether a party has waived its right to arbitration. *See Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988). These factors generally include whether the party seeking arbitration acted inconsistently with

the right to arbitrate, whether the "litigation machinery" was substantially invoked, when the arbitration was requested, whether the party requesting arbitration filed a counterclaim, whether important intervening steps had taken place, and whether the delay prejudiced the opposing party. *Id.*

Defendant moved to dismiss plaintiff's original state law claims and served limited discovery in the first state court action. But the state court never ruled on defendant's motion because plaintiff withdrew those claims. After plaintiff filed an amended petition, defendant promptly removed this case to federal court and moved to compel arbitration. Indeed, less than three months elapsed from the filing of plaintiff's first state court petition to the filing of defendant's motion to compel arbitration. With respect to plaintiff's second state court petition, defendant immediately removed the lawsuit and moved to compel arbitration. Defendant did not file a counterclaim in either lawsuit and a scheduling conference has not occurred. Plaintiff has not identified any prejudice that he will suffer as a result of defendant's delay—to the extent any exists—if the court compels arbitration. For these reasons, the court determines that defendant did not waive its right to arbitration.

**IT IS THEREFORE ORDERED** that Defendant's Motion [To] Compel Arbitration (Doc. 7) and Defendant's Supplemental Motion To Compel Arbitration and Memorandum In Support (Doc. 16) are granted. The court stays all proceedings and orders the parties to proceed to arbitration.

Dated this 19th day of September, 2012, at Kansas City, Kansas.

\_\_s/ Carlos Murguia_____
**CARLOS MURGUIA**
United States District Judge